Filed 8/26/13  P. v. Lopez CA2/8

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br><br>　　v.<br><br>JOEL LOPEZ et al.,<br><br>　　　Defendants and Appellants. | B242990<br><br>(Los Angeles County<br>Super. Ct. No. BA390627) |

APPEAL from a judgment of the Superior Court of Los Angeles County.  John Fisher, Judge.  Affirmed.

Lyn A. Woodward, under appointment by the Court of Appeal, for Defendant and Appellant Joel Lopez.

Christopher Nalls, under appointment by the Court of Appeal, for Defendant and Appellant Juan Jose Madrid.

No appearance for Plaintiff and Respondent.

_____

Defendants Joel Lopez and Juan Jose Madrid appeal from their conviction following no contest pleas to the charge of possession for sale of cocaine, entered after the trial court denied their joint motion to quash a search warrant. Following our independent review of the record pursuant to *People v. Wende* (1979) 25 Cal.3d 436, 441 (*Wende*), we affirm both convictions.

## FACTUAL AND PROCEDURAL HISTORY

We glean the following facts from City of Cypress Police Detective Scott Ausmus's search warrant application and preliminary hearing testimony. In a Statement of Probable Cause submitted in support of the search warrant application, Ausmus recounted that undercover officers surveilling the Macy's parking lot at the Cerritos Mall in the early evening on October 27, 2011, observed a blue Nissan park next to a gold Toyota. Lopez and Madrid got out of the Nissan. While the driver stood by the Nissan's trunk, the passenger walked towards Macy's where he met a woman. The woman and the Nissan passenger walked to the Nissan. The trunks of both the Nissan and the Toyota opened. The Nissan passenger removed a black nylon bag from the Nissan trunk and placed it in the Toyota trunk, then got into the driver's seat of the Toyota. The Nissan driver returned to the driver's seat of the Nissan and both cars drove away in separate directions. Officers continued surveilling both cars as they were driven in an evasive manner (e.g. over the speed limit, unsafe lane changes, etc.). Eventually the cab stopped in the driveway of a single family residence on Summer Avenue in Norwalk.

When officers resumed surveillance of the Summer Avenue residence November 1, both the Nissan and the Toyota were parked at that location. Later, a black two-door Acura pulled into the driveway. The man who had previously been observed driving the Nissan got out of the Acura's passenger's seat and entered the residence; the Acura's driver followed a minute later.

A DEA agent informed Ausmus that he was familiar with the Acura seen at the Summer Avenue residence and that it had a secret compartment used to transport illegal narcotics.

2

Officers resumed surveillance of the Summer Avenue residence about 8:00 a.m. the next day, November 2. About 4:15 p.m., Lopez and Madrid left in the Acura. Officers followed as the Acura pulled into parking lots at a gas station, a Kmart and a Carl's Jr. In the gas station and Kmart parking lots, the Acura passenger got out of the car, looked around and then got back into the car, which proceeded to the next parking lot. Ausmus characterized this as counter-surveillance driving intended to elude police detection. In the Carl's Jr. parking lot, the Acura parked next to a white Ford Edge with paper license plates. The drivers of the Acura and the Ford met each other inside the Carl's Jr. while the Acura passenger remained in the car, talking on a cell phone and looking around. About five minutes later, the drivers returned to their vehicles and both cars returned to the Kmart parking lot where they parked next to each other. All three men got out of their respective cars and transferred two large plastic bins from the Ford hatchback to the Acura trunk. The men then returned to their cars and drove away in separate directions. Officers followed the Acura back to the Summer Avenue residence where it pulled into the garage and the garage door was closed. In Ausmus's opinion, two narcotics transactions had occurred and the Summer Avenue residence was being used as a "stash house." A search warrant issued for the Summer Avenue residence and the three cars (Nissan, Toyota and Acura).

Immediately before executing the warrant, officers observed Lopez in the Toyota and Madrid in the Nissan drive away from the Summer Avenue residence. Both men were stopped. Madrid was found to be in possession of a large amount of U.S. currency, but no driver's license. Meanwhile, at the residence, in a locked bedroom identified by Lopez's wife as Madrid's room, officers found mail addressed to Madrid and a loaded semi-automatic handgun, which they seized. From under the house, accessible through a trap door in a coat closet, officers seized 51 separately wrapped kilos of cocaine and two money counters. From elsewhere in the house officers seized 52 packages "appearing to be trash of previous wrapped kilos," packaging material and a black suitcase. A pickup truck with false compartments was found in the garage.

Lopez and Madrid were jointly charged with possession of cocaine for sale (count 1) (Health & Saf. Code, § 11351) and use of a false compartment to transport a controlled substance (Health & Saf. Code, § 11366.8, subd. (a)) (counts 2 [the Acura] and 4 [the pickup truck]); Madrid was also charged with possession of a controlled substance with a firearm (Health & Saf. Code, §11370.1, subd. (a)) (count 3); as to count 1, a weight enhancement was alleged as to both defendants (Health & Saf. Code, § 11370.4, subd. (a)(5)) and a personally armed enhancement (Pen. Code, § 12022, subd. (c)) was alleged as to Madrid only.

Lopez and Madrid moved to quash, or in the alternative traverse, the search warrant and suppress all evidence obtained in the search. In opposition to the motion to quash, the People maintained probable cause was established by the totality of the circumstances, including information obtained from the DEA agent about a secret compartment in the Acura, the counter-surveillance driving and the two hand-offs. The trial court denied the motion to quash. Finding no basis to hold a *Franks* hearing[1] at that time, the court agreed to hear testimony relevant to the motion to traverse during the preliminary hearing. At the preliminary hearing, Ausmus testified that he prepared the Statement of Probable Cause from his own notes which sometimes reflected what other officers told him. After preparing the warrant application, Ausmus destroyed his notes as he was trained to do; other than the warrant application, Ausmus did not write any reports of the three day surveillance and he did not believe any other officer did so. The trial court did not expressly rule on the motion to traverse, nor did either defense counsel request a ruling. Madrid's subsequent Penal Code section 995 motion to set aside the information for insufficiency of the evidence was denied.

Lopez and Madrid each pled no contest to possession of cocaine for sale and admitted a different weight enhancement. The remaining counts were dismissed. Both were sentenced to 12 years in prison.

---

[1]    *Franks v. Delaware* (1978) 438 U.S. 154, 155-156 [where defendant makes substantial preliminary showing that a false statement in the warrant affidavit led to finding of probable cause, Fourth Amendment requires hearing at defendant's request].

We appointed separate counsel to represent each defendant on appeal. After examination of the record, each appointed counsel filed a separate opening brief which contained an acknowledgment that they had been unable to find any arguable issues and requesting that we independently review the record pursuant to *Wende, supra*, 25 Cal.3d 436. On April 11, 2013, we advised Madrid that he had 30 days within which to personally submit any contentions or issues which he wished us to consider. On April 19, 2013, we gave an identical advisement to Lopez. Neither defendant has filed anything.

We have examined the entire record and are satisfied that both appointed counsel have fully complied with their responsibilities and that no arguable issues exist vis a vis either defendant. (*Wende, supra*, 25 Cal.3d at p. 441.)

## DISPOSITION

The judgments are affirmed.


RUBIN, ACTING P. J.

WE CONCUR:



FLIER, J.



GRIMES, J.

5